**In the United States District Court
for the District of Kansas**

————————

Case No. 23-cv-02163-TC-BGS

————————

PERRY L. OATIS,

*Plaintiff*

v.

JAY ARMBRISTER, ET AL.,

*Defendants*

————————

**MEMORANDUM AND ORDER**

Plaintiff Perry Oatis is detained pretrial in the Douglas County Correctional Facility. Doc. 36 at 1. He sued six defendants in Kansas state court, alleging that they violated the United States Constitution and various Kansas statutes, Doc. 1-1 at 5, and seeking a preliminary injunction, Doc. 20. Defendants removed to federal court, Doc. 1, and three of them moved for judgment on the pleadings, Doc. 35. For the following reasons, those defendants' motion is granted.

**I**

**A**

**1.** A motion for judgment on the pleadings is appropriate "[a]fter the pleadings are closed," which means "upon the filing of a complaint and answer." *Progressive Cas. Ins. Co. v. Estate of Crone*, 894 F. Supp. 383, 385 (D. Kan. 1995); *see* 5C Wright & Miller, *Federal Practice & Procedure* § 1367 (3d ed. 2021); *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 810 n.3 (10th Cir. 2021) (noting that each defendant must answer). Rule 12(c) governs these motions. Its standard is identical to that for a motion to dismiss under Rule 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). To survive a motion to dismiss, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to

1

relief." Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Evaluating a motion to dismiss is a two-step process. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009); *see also Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). First, the Court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Iqbal*, 556 U.S. at 678–80. Second, the Court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A claim need not be probable to be considered plausible. *Id.* But the facts, viewed in the light most favorable to the claimant, must adduce "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**2.** When a plaintiff, such as Oatis, proceeds pro se, a court must construe his pleadings generously. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, and apparent unfamiliarity with pleading requirements. *Id.* But it does not permit a court to construct legal theories on his behalf or assume facts not pled. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

**B**

Oatis has been detained pre-trial at the Douglas County Correctional Facility for several years. Doc. 1-1 at 6; Doc. 20 at 2. He arrived there with a hip injury, among other medical conditions. Doc. 1-1 at 6. He sought medical treatment, and a doctor determined from imaging that Oatis had "[m]arked erosive degenerative change involving [his]

2

left hip." *Id.* at 73. Days later, Oatis requested an appointment with a specialist. *Id.* at 66. Melanie Stroda, a nurse practitioner at the facility, responded to the request and concluded that Oatis required "a total hip arthroplasty." *Id.* She informed him that the procedure was elective. *Id.*

Oatis then saw three orthopedic specialisits. Doc. 1-1 at 93–99. The first specialist confirmed that Oatis's x-rays showed "end-stage [left] hip degenerative changes" and that "joint replacement is the only treatment [that] can resolve his symptoms." *Id.* at 98–99. The second specialist agreed, and recommended non-operative treatments prior to surgery. *Id.* at 95–96 (discussing steroid injections). He stated that the hip replacement would be an elective procedure and that he "would like [Oatis] to not be incarcerated" before moving forward with surgery. *Id.* at 96. The third specialist concurred with the earlier diagnoses. *Id.* at 94. He agreed that Oatis should postpone surgery until his release "due to risk of infection and difficulty with adequate rehab regimen while incarcerated." *Id.*

Oatis objected to the proposed delay. He filed numerous medical requests through September 2022, seeking a list of elective procedures, Doc. 1-1 at 91, inquring who was responsible for delaying his surgery and why, *id.* at 90, requesting visits with specialists and primary care doctors outside of the corrections facility, *id.* at 86–88, and seeking assurances that the jail would fund his hip surgery, *id.* at 81. Stroda replied in each instance, assuring Oatis that any delay was not a denial of care but in line with the advice of the orthopedic specialists, *id.* at 89, and that funding was not a factor in the delay, *id.* at 81, 89. She informed him that the surgery could proceed once a doctor became available to perform it. *See id.* at 81.

Oatis saw another orthopedic specialist, Dr. Perry, who was willing to operate even while Oatis was incarcerated. Doc. 1-1 at 80; *see also id.* at 76. Stroda told Oatis that she would coordinate with Dr. Perry to schedule the surgery and help with pre-operative care. *Id.* She informed him that surgery would not happen immediately, but that staff would try to avoid delays. *See id.*

While awaiting surgery, Oatis sued Defendants in Kansas state court. Doc. 1-1 at 5–28. Three of them work for the county: Sheriff Jay Armbrister, Major Gary Bunting, and Captain LeRonda Roome. Doc. 35 at 1. The other three are Advanced Correctional Healthcare and its employees Tamara Lyles and Melanie Stroda. Doc. 6.

3

Oatis argues that Defendants violated the Eighth and Fourteenth Amendments of the United States Constitution as well as K.S.A. 60-203, 19-1910, 40-3408, and 40-3412. Doc. 1-1 at 5. Specifically, he says they were deliberately indifferent to his need for a hip replacement and violated his right to be free from punishment when they delayed that surgery. *Id.* Oatis has now received the hip replacement. Doc. 34 at 3, 6 (referring to his "repaired hip" and "rehabilitation for [his] newly implanted left hip").

## II

The County Defendants—Armbrister, Bunting, and Roome— move for judgment on the pleadings. Doc. 35. Oatis says they were deliberately indifferent to his serious medical needs because they, among other things, delayed his hip surgery. Doc. 1-1 at 5. He also raises a host of state claims: K.S.A. § 60-203, K.S.A. § 19-1910, K.S.A. § 40-3408, K.S.A. § 40-3412, medical malpractice, and intentional infliction of emotional distress. *Id.* at 1, 17, 25. All these claims fail as against the County Defendants for the reasons stated below. So their motion, Doc. 35, is granted.

**1.** Oatis's Section 1983 claim cites both the Eighth and Fourteenth Amendments. Doc. 1-1 at 5. Because he is a pretrial detainee, only the Fourteenth Amendment applies—but federal courts "apply the same deliberate indifference standard no matter which amendment provides the constitutional basis for the claim." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020).

That standard requires Oatis to "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Strain*, 977 F.3d at 989 (citation and internal quotation marks omitted). It contains two components, one subjective and the other objective. The objective component requires a "sufficiently serious" alleged deprivation. *Id.* A medical need meets this mark "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* The subjective component focuses on Defendants, insisting that they knew of and disregarded "an excessive risk to inmate health or safety." *Id.* Abstract risk is not enough. An official must be aware of facts presaging a substantial risk of serious harm and "also draw [that] inference." *Id.* (citation omitted).

4

Armbrister, Bunting, and Roome move for judgment on the pleadings. Doc. 36 at 1. They play very minor roles in Oatis's complaint. And even if one assumes that Oatis presented a serious medical need, nothing in the complaint indicates the County Defendants were deliberately indifferent to that need. *Cf. Oxendine v. Kaplan*, 241 F.3d 1272, 1278 (10th Cir. 2001) (finding that "alleged delay in obtaining specialized medical treatment" for a poorly-treated necrifying finger met "the objective element of the deliberate indifference test").

In his complaint, Oatis suggests that Bunting and Roome might have concurred in Stroda's opinion that "there is no indication to seek [an] additional opinion pertaining to your hip." Doc. 1-1 at 10, 12. Oatis also submitted grievances to Roome. *Id.* at 14. Roome denied at least one of them, and cited the opinions of "all five [medical] personnel" who had been involved. *Id.* at 15. Bunting concurred with Roome, Oatis says. *Id.* And that was allegedly insufficient, because he did "nothing to help resolve the pain or improve the treatment" and did not "inquire directly to the plaintiff and ask if your [sic] OK or what can I do to help you!" *Id.* Moreover, Oatis says, jail policy requires a physician. *Id.* at 16–17. Yet Bunting permitted Stroda—a nurse practitioner—to provide care. *Id.* Finally, Armbrister does not appear in the complaint. *See generally id.*

These allegations do not plausibly allege deliberate indifference. Defendants provided some assistance. Doc. 1-1 at 23 ("[T]he only medical treatment [Oatis] has received from [Defendants] is tramadol, Tylenol, a walker, and … a wheelchair."); *cf. Strain*, 977 F.3d at 994 (crediting defendants who "at least attempted to treat" the plaintiff even if receiving "some care does not foreclose the possibility of a deliberate indifference claim"). They also heeded advice from multiple medical professionals. The physicians offered options short of surgery, which Oatis refused. Doc. 1-1 at 11–13. And the physicians agreed that surgery should await Oatis's release from prison. Doc. 1-1 at 9; *see also id.* at 12 (advising that Oatis was not a good candidate for other reasons). Oatis disagreed, and eventually so did Dr. Perry. Doc. 1-1 at 76, 80. But "[d]isagreement about course of treatment or mere negligence in administering treatment do not amount to a constitutional violation." *Strain*, 977 F.3d at 987; *cf. Oxendine*, 241 F.3d at 1279 (concluding that prisoner pled "sufficient allegations to satisfy the subjective element of the deliberate indifference test" by alleging that a doctor recorded gangrenous tissue without seeking specialized assistance).

5

Delay is also insufficient, unless it resulted in "substantial harm." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Oatis might allege substantial harm, since that "requirement may be satisfied by … considerable pain." *Id.* (internal quotation marks omitted). Even if he does, the County Defendants did not delay. They provided care, sought multiple medical opinions, and eventually found a surgeon—the sixth medical professional that evaluated Oatis's condition—who was willing to perform a surgery that others would not perform. *See* Doc. 1-1 at 11–15, 23, 75–76.

Oatis's overarching complaint, construed generously, seems to be that Defendants were unsympathetic to his painful condition. *E.g.*, Doc. 1-1 at 10 (doctor was rude); Doc. 1-1 at 15 (Bunting did not ask what he could do to help Oatis); Doc. 1-1 at 24 (Roome and Bunting did "not even tak[e] time to come visit [Oatis] the entire duration of incarceration"). This simply does not state a constitutional violation.[1] *See Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1270–71 (10th Cir. 2022).

**2.** Oatis's state law claims are not viable, at least against the County Defendants. He relies upon K.S.A. § 19-1910, K.S.A. § 40-3408, and K.S.A. § 40-3412. Doc. 1-1 at 1. And he appears to raise two other tort claims, one for intentional infliction of emotional distress and the other for medical malpractice. *Id.* at 17, 25.

None of Oatis's specific citations give him a cause of action. Section 60-203 describes when "[a] civil action is commenced." Kan. Stat. Ann. § 60-203. It does not create a private cause of action. A similar thing is true of Section 19-1910, which describes when a county must pay for a prisoner's medical treatment. Kan. Stat. Ann. § 19-1910. When a county pays, it pays the sheriff—not the prisoner. *See Univ. of Kansas Hosp. Auth. v. Bd. of Comm'rs of Cnty. of Wabaunsee*, 327 P.3d 430,

---

[1] Oatis's response sketches a new theory of liability based on Douglas County's contract with Advanced Correctional Healthcare. Doc. 51-1 at 22–23; Doc. 58 at 1. Oatis cannot broaden his complaint by adding factual or legal claims to his response brief. *See* Fed. R. Civ. P. 15(a); *see also United States v. Mannie*, 971 F.3d 1145, 1158 n.19 (10th Cir. 2020); *Lawmaster v. Ward*, 125 F.3d 1341, 1346 n.2 (10th Cir.1997); *Black & Veatch Corp. v. Aspen Ins. (Uk) Ltd.*, 378 F. Supp. 3d 975, 989 (D. Kan. 2019). And even if he could, he does not explain why he would be able to sue on a contract to which he is not a party.

431 (Kan. 2014). Section 40-3408 and Section 40-3412 restrict suits against insurers and healthcare providers. Kan. Stat. Ann. §§ 40-3408, 3412. Oatis does not explain how these sections provide him a right to recover against the County Defendants. *See Aves By & Through Aves v. Shah*, 906 P.2d 642, 651 (Kan. 1995) (analyzing Section 40-2412(c) as an attempt "to prevent common-law bad faith claims"); *Marshall v. Kansas Med. Mut. Ins. Co.*, 73 P.3d 120, 126 (Kan. 2003) (analyzing Section 40-3408 in the context of a doctor's malpractice coverage).

Oatis also appears to raise two other tort claims. He "is alleging medical malpractice against the defendants for the violation of the standard of care applicable to the practice of a healthcare provider." Doc. 1-1 at 25. And he alleges "intentional infliction of emotional distress caused by medical and … CPT Roome and Major Bunting for denying [Oatis] necessary medical treatment, causing [him] to seek mental health counseling." Doc. 1-1 at 17.

These (and any other tort claims) claims fail as to the County Defendants because Oatis has not established compliance with Kansas's notice of claim statute. Under Kansas law, a plaintiff must provide notice before he or she sues a Kansas county or its employees. Kan. Stat. Ann. § 12-105b(d). Kansas treats this requirement as jurisdictional. *See Whaley v. Sharp*, 343 P.3d 63, 67 (Kan. 2014) (recognizing that notice "is required before a court has subject matter jurisdiction over a tort claim against a municipality"). Oatis did not provide notice. *See* Doc. 51-1 at 24–26 (arguing that notice is not necessary); Doc. 36-2. As a result, there is no jurisdiction to adjudicate his state-law malpractice and emotional distress claims. *Phillips v. Humble*, 587 F.3d 1267, 1273 (10th Cir. 2009) (finding that Section 12-105b(d) barred claims when a Kansas plaintiff "completely failed to provide the state with prior notice of [his] claims"); *Leichty v. Bethel Coll.*, No. 22-3047, 2023 WL 3016145, at *5 (10th Cir. Apr. 20, 2023) (same).

Oatis argues that the Supremacy Clause compels a different result. Doc. 51-1 at 24. It does not. *Felder v. Casey*, 487 U.S. 131, 151 (1988) (citation omitted) ("[F]ederal courts entertaining state-law claims … are obligated to apply the [state's] notice-of-claim provision.").

### III

For the foregoing reasons, the County Defendants' Amended Motion for Judgment on the Pleadings, Doc. 35, is GRANTED, and, as a

7

result, Oatis's Motion for Preliminary Injunction, Doc. 20, is DENIED insofar as it seeks injunctive relief from the County Defendants.

It is so ordered.

Date: February 27, 2024                    s/ Toby Crouse
                                           Toby Crouse
                                           United States District Judge

8