**In the United States District Court
for the District of Kansas**

———————

Case No. 23-cv-02163-TC

———————

PERRY L. OATIS,

*Plaintiff*

v.

JAY ARMBRISTER, ET AL.,

*Defendants*

———————

**MEMORANDUM AND ORDER**

 Plaintiff Perry L. Oatis filed this pro se civil rights action, alleging that Defendants violated the United States Constitution and various Kansas laws concerning his pretrial detention. Doc. 1-1 at 5. Defendants moved for summary judgment. Doc. 82. For the following reasons, that motion is granted.

**I**

**A**

 **1.** Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(a)–(c). To determine whether a genuine issue of fact exists, the Court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record, *see Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to dispositive matters. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

**2.** Oatis proceeds pro se, which requires a generous construction of his filings. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, and apparent unfamiliarity with pleading requirements. *Id.* But it does not permit construction of legal theories on a plaintiff's behalf or assumption of facts not pled. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). When a represented party moves for summary judgment against a pro se litigant, the District of Kansas Local Rules impose an additional burden. Specifically, the represented movant must serve and file as a separate document a "Notice to Pro Se Litigant Who Opposes a Motion For Summary Judgment." D. Kan. R. 56.1(d). That notice must include the full texts of Federal Rule of Civil Procedure 56 and Local Rule 56.1.

**B**

The following facts are taken from Defendants' uncontroverted statement of facts. Oatis failed to properly address Defendants' statement of uncontroverted facts as required by Fed. R. Civ. P. 56(e). As a result, there are no facts in dispute because Oatis did not properly controvert Defendants' facts, nor did he support any additional or contrary facts of his own.[1] *See McWhorter v. Fed. Aviation Admin.*, 88 F.4th 1317, 1323 (10th Cir. 2023) (finding that a pro se plaintiff still must meet the minimum requirements of ordinary procedural rules); *see also* Doc. 84 (notice provided to Oatis including the text of Rule 56 and D. Kan. Rule 56.1(d)).

Oatis was a pretrial detainee at the Douglas County Correctional Facility when he filed this lawsuit. Doc. 83 at ¶ 1. His claims focus on requests he made for medical attention that he alleges were denied by three defendants—Advanced Correctional Healthcare and two of its employees, Tamara Lyles and Melanie Stroda.[2] *See generally id.*

Oatis made several medical complaints related to pain in his feet, hip, and legs during his pretrial detention. *See* Doc. 83 at ¶¶ 2, 12, 15, 19. He complained the first time on November 6, 2019, seeking medical attention for "numbness in his foot." *Id.* at ¶ 2. Defendants approved medical shoes for Oatis. *Id.* at ¶ 3.

Oatis also complained of hip pain. Doc. 83 at ¶ 4. Defendants made an appointment for Oatis to visit a specialist at OrthoKansas, a provider outside of the correctional facility, about his hip pain. *Id.* at ¶¶ 4–5. After that appointment on February 3, 2021, a physician assistant at OrthoKansas informed Defendant Tamara Lyles that Oatis's symptoms could be relieved through "non-urgent, elective surgery." *Id.* at ¶ 5; Doc. 83-1 at 49. Lyles noted that Defendants could wait until

---

[1] Oatis's response makes assertions of alleged facts and attempts to controvert Defendants' statement of facts but fails to support them with, among other things, appropriate record citations. Doc. 89 at 1–2. That is insufficient. Fed. R. Civ. P. 56(c); D. Kan. Rule 56.1(b).

[2] Oatis originally sued three employees of Douglas County, too. Those Defendants moved for and obtained dismissal of Oatis's claims against them. Doc. 67.

Oatis had a hearing in March to determine if he needed the surgery while he was detained. Doc. 83 at ¶ 5; Doc. 83-1 at 49.

In March 2021, Oatis underwent a surgical procedure while in custody. The surgery consisted of "excision of anterior ankle spur and decompression of the superficial peroneal nerve." Doc. 83 at ¶ 6. His provider prescribed Oatis pain medicine and ice to manage his post-surgery pain. *Id.* at ¶ 7.

Throughout 2021 and 2022, Defendants also arranged for three OrthoKansas doctors to evaluate Oatis pursuant to his requests. *See* Doc. 83 at ¶¶ 8, 9, 11. The first, Dr. Luis Salazar, evaluated Oatis and "informed him that joint replacement is the only treatment [that] can resolve his symptoms and return functionality." Doc. 83-1 at 54. Dr. Salazar recommended that Oatis schedule an appointment with Dr. James Hutton or Dr. Adam Goodyear to discuss treatment options. *Id.* at ¶ 8, 9. Oatis thereafter saw Dr. Hutton, who recommended deferring surgery "until Mr. Oatis was no longer incarcerated due to the risk of infection and difficulty with adequate rehab regimen." *Id.* at ¶ 11. Oatis also saw Dr. Goodyear, who recommended steroid injections, which Oatis declined. *Id.* at ¶ 9. Oatis saw Dr. Salazar again, and Dr. Salazar recommended a hip injection and a softer mattress. *Id.* at ¶ 13. Oatis declined the injection, and when Defendants offered him two new mattresses, he declined those too. *Id.* at ¶¶ 13–14.

In the same timeframe, Defendants responded to several of Oatis's requests for updates and/or treatment. *See* Doc. 83 at ¶ 10. For example, Oatis requested an increase in his medication, and Defendants placed him on a list to see a medical provider at the correctional facility. *Id.* Another day, Oatis "requested an update as to his upcoming appointment for pain in his left ankle." *Id.* at ¶ 15. Defendants informed Oatis that his appointment was delayed because of COVID-19 restrictions. *Id.*

Oatis asked Defendants to schedule him an appointment with a specialist in Kansas City because "he no longer trusted the medical providers at OrthoKansas." Doc. 83 at ¶ 12. He also stated "that he was experiencing physical and emotional anguish arising from his alleged medical condition and subsequent chronic pain." *Id.* at ¶ 19. In response, Defendant Lyles requested a referral on Oatis's behalf, *id.* at ¶ 20, and Dr. Michael Perry with the University of Kansas Health System evaluated Oatis, *id.* at ¶ 22.

4

On November 17, 2022, Dr. Perry "diagnosed Oatis with end-stage osteoarthritis" and recommended a hip replacement. Doc. 83 at ¶ 22. Less than a month later, Oatis requested an update on his surgery and asked "if the surgery is scheduled in 2022 or 2023." Doc. 83-1 at 74. The next day, Defendant Stroda informed Oatis that Dr. Perry did not have availability until 2023. *Id.* She also assured Oatis that Defendants would arrange any necessary pre-operative appointments "per the surgeon's directions to avoid delays." *Id.*

Oatis filed this lawsuit on January 10, 2023. Doc. 1. A few months later, he received the hip replacement surgery. *See* Doc. 89 at 2, 6 (noting that the hip operation occurred twenty-two months after Dr. Salazar identified the need for surgery in June 2021).

Oatis argues that Defendants violated the Eighth and Fourteenth Amendments of the United States Constitution as well as Kan. Stat. Ann. §§ 60-203, 19-1910, 40-3408, and 40-3412. Doc. 1-1 at 5. He also brings state-law claims of medical malpractice and intentional infliction of emotional distress. *Id.* at 1, 17, 25. Specifically, he says Defendants were deliberately indifferent to his need for a hip replacement and violated his right to be free from punishment when they delayed that surgery. *Id.* at 5. Defendants move for summary judgment, arguing that the uncontroverted facts fail to establish a deprivation of Oatis's federal or state rights.[3] Doc. 83.

## II

The uncontroverted facts show that Defendants were not deliberately indifferent to Oatis's medical needs. And Oatis has not produced evidence sufficient to prevail on his state-law claims of medical malpractice and intentional infliction of emotional distress. As a result, Defendants' motion for summary judgment is granted.

---

[3] Defendants only argue that Oatis failed to show a constitutional violation because they were not deliberately indifferent to Oatis's medical needs. Doc. 83 at 6–10. They do not assert that, as privately contracted medical providers operating within a jail, they are entitled to qualified immunity. *See Richardson v. McKnight*, 521 U.S. 399, 412 (1997) (holding that private prison guards are not entitled to qualified immunity in Section 1983 cases); *but see Filarsky v. Delia*, 566 U.S. 377, 393 (2012) (finding that a private attorney was entitled to qualified immunity and noting that *Richardson's* holding is narrow but still good law).

## A

Defendants first argue they are entitled to summary judgment on Oatis's Section 1983 claim. Doc. 83 at 6–10. Oatis's Section 1983 claim cites both the Eighth and Fourteenth Amendments. Doc. 1-1 at 5. Because he is a pretrial detainee, only the Fourteenth Amendment applies—but federal courts "apply the same deliberate indifference standard no matter which amendment provides the constitutional basis for the claim." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020).

That standard requires Oatis to "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Strain*, 977 F.3d at 989 (citation and internal quotation marks omitted). It contains two components, one subjective and the other objective. The objective component requires a "sufficiently serious" alleged deprivation. *Id.* A medical need meets this mark "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* The subjective component focuses on Defendants, insisting that they knew of and disregarded "an excessive risk to inmate health or safety." *Id.* Abstract risk is not enough. An official must be aware of facts presaging a substantial risk of serious harm and "also draw [that] inference." *Id.* (citation omitted).

For purposes of summary judgment, it is assumed that Oatis's medical condition qualifies as an objectively serious medical need. *See Al-Turki v. Robinson*, 762 F.3d 1188, 1192–93 (10th Cir. 2014). But even so, the uncontested facts repudiate any notion that Defendants were deliberately indifferent to that need. *Contra* Doc. 89 at 6.

The facts demonstrate that Defendants actively managed Oatis's hip condition throughout the course of his detention. Oatis may have disagreed with Defendants' recommended course of treatment, but the record shows that they provided Oatis medical assistance. For example, Defendants heeded advice from multiple medical professionals. From November 2019 until November 2022, the physicians offered options short of surgery, including cortisone injections and softer mattresses, which Oatis refused. In June 2021, Dr. Salazar suggested that surgery was advisable but recommended it await Oatis's release from jail given the risk of infection, rehabilitation barriers, and the like. Others continued to suggest cortisol injections and different mattresses, but Oatis chose not to follow those opinions or the treatment options they recommended. These acts do not equate to a constitutional

violation, as the Tenth Circuit has frequently recognized that "[d]isagreement about course of treatment or mere negligence in administering treatment do not amount to a constitutional violation." *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020) (finding that the plaintiff's allegation that the defendants exercised poor professional judgment and inadequately evaluated the plaintiff were insufficient to show deliberate indifference).

Nor is there a colorable claim that Defendants delayed treatment. Over the course of twenty-two months, they sought multiple medical opinions and offered Oatis accommodations consistent with those opinions. When Oatis lost trust in those providers, Defendants arranged for Oatis to visit a new provider. All told, Oatis saw five specialists before Dr. Perry evaluated him and recommended surgery during Oatis's incarceration in November of 2022. And once Defendants received Dr. Perry's recommendation, they scheduled Oatis's hip surgery on Dr. Perry's first available appointment. In fact, Oatis filed this lawsuit while he was awaiting the surgery he ultimately received. His overarching complaint, construed in his favor, is that he disagreed with his medical providers' opinion not to recommend surgery while being detained and that once a doctor recommended surgery during his detention, it would take too long to schedule. Doc. 89 at 2–3. While his position is understandable, the record is devoid of any facts indicating that Defendants knew of and disregarded a substantial risk or refused to verify any underlying facts they suspected were true. *See Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (explaining that a medical provider's decision to deny or delay a request to see a specialist "is a decision about the patient's course of treatment"); *Amundsen v. Jones*, 533 F.3d 1192, 1198 (10th Cir. 2008) (noting that when a plaintiff has not carried the burden to produce evidence in a § 1983 context, the claim should not survive summary judgment).

Oatis seeks a different result by claiming that Defendant Stroda stated in her response to one of his medical requests in June 2021 regarding x-rays he had taken that his injury was "in need of urgent resolution." Doc. 89 at 1–3. While this appears to be his main contention, Oatis did not support it assertion with record evidence to substantiate his claim. That obviously precludes any meaningful evaluation. The best that can be determined is based on Stroda's affidavit in which she states that—contrary to what Oatis argues—she did not write that Oatis's condition needed urgent resolution. Doc. 90-1 at ¶ 7. To the contrary, Stroda's affidavit states that she indicated that Oatis's need

7

was "non-urgent." *Id.* Then, she says she "wrote the beginning of the word 'resolution,'" but "crossed out the word as it was not an appropriate word to address the non-urgent need for an orthopedic referral for Plaintiff." *Id.* But even assuming Stroda believed Oatis's needs were "urgent" or in need of "resolution," she was not deliberately indifferent because she was following the recommendations of several providers in an attempt to resolve Oatis's condition. *See Duffield v. Jackson*, 545 F.3d 1234, 1238–39 (10th Cir. 2008) (affirming dismissal of a case where the plaintiff "disagree[d] with some of the diagnoses and treatments and argues that they did not relieve the pain").

**B**

Oatis also asserts two claims arising under Kansas tort law.[4] One is a medical malpractice claim and the other is a claim for intentional infliction of emotional distress. Defendants seek summary judgment as to both.

**1.** Under Kansas law, a medical malpractice plaintiff must prove that the healthcare provider owed a duty to the plaintiff, breached that duty, and that the provider's breach caused the patient's injury. *Talavera ex rel. Gonzalez v. Wiley*, 725 F.3d 1262, 1267–68 (10th Cir. 2013) (citing *Wozniak v. Lipoff*, 750 P.2d 971, 975 (Kan. 1988)). Kansas law further requires that the plaintiff satisfy "each element through expert medical testimony." *Id.* (citing *Maunz v. Perales*, 76 P.3d 1027, 1032 (Kan. 2003)).

Defendants are entitled to summary judgment on Oatis's medical malpractice claim. Oatis's claim for medical malpractice fails because has not designated any expert witnesses. And the time for him to do so has expired. *See* Doc. 69 at 4. As a result, Oatis has not produced evidence necessary to establish Defendants' standard of care or causation. *See Drouhard-Nordhus*, 345 P.3d at 288 (affirming summary judgment because the plaintiff did not produce expert testimony on causation in a medical malpractice case); *Barroca v. United States*, No. 19-2688, 2022 WL 1471314, at *3 (D. Kan. May 10, 2022) (granting summary judgment on a medical malpractice claim under Kansas law because

---

[4] A federal court sitting in diversity or exercising supplemental jurisdiction over state-law claims applies the substantive law of the state in which it sits, as enacted by the state legislature and interpreted by the state's highest court. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938).

8

the plaintiff did not produce sufficient expert testimony on the standard of care and causation). While there are exceptions to this rule, Oatis has made no argument nor produced evidence sufficient to satisfy any of them. *See Talavera*, 725 F.3d at 1268 n.2 (declining to analyze exceptions to Kansas's expert testimony requirement in medical malpractice cases because the plaintiff did not allege that an exception applied to the defendants' conduct); *Latshaw v. Mt. Carmel Hosp.*, 53 F. Supp. 2d 1133, 1138 (D. Kan. 1999) (not analyzing exceptions to the expert testimony rule when the plaintiff did not assert them).

**2.** A plaintiff alleging intentional infliction of emotional distress must prove that the defendant acted "intentionally or with reckless disregard" for the plaintiff's well-being and that the defendant's "extreme and outrageous" conduct caused the plaintiff "extreme and severe" mental distress. *Harte v. Bd. of Comm'rs of Cnty. of Johnson, Kan.*, 864 F.3d 1154, 1197 (10th Cir. 2017) (citing *Roberts v. Saylor*, 637 P.2d 1175, 1179 (Kan. 1981)). In particular, the plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and … [be] utterly intolerable in a civilized society." *Id.* (quoting *Roberts*, 637 P.2d at 1179).

Defendants are also entitled to summary judgment on Oatis's intentional infliction of emotional distress claim. There is no evidence suggesting that Defendants' conduct was "extreme and outrageous." The conduct at issue is that Defendants arranged for five medical providers to evaluate Oatis and then followed the advice to delay surgery until Oatis was no longer incarcerated but to provide treatment short of surgery to relieve his pain. Then, after a sixth provider—Dr. Perry—recommended surgery, Defendants scheduled that surgery consistent with Dr. Perry's schedule. Oatis contends Dr. Perry's recommendation is what the prior providers should have done at the outset. Doc. 89 at 3. But again, this is merely a disagreement with the medical opinions of the first five providers that is not actionable. Defendants' conduct is not even remotely close to the intolerable conduct necessary to state a claim. *See, e.g.*, *Burgess v. Perdue*, 721 P.2d 239, 243 (Kan. 1986) (finding that a mother who was told her son's brain was in a jar did not assert extreme and outrageous conduct); *Hoard v. Shawnee Mission Med. Ctr.*, 662 P.2d 1214, 1225–26 (Kan. 1983) (holding that a medical provider's conduct did not rise to the level of extreme and outrageous when the provider falsely told the plaintiffs that their daughter had died); *Roberts v. Saylor*, 637 P.2d 1175, 1180–81 (Kan. 1981) (affirming summary judgment when a doctor approached a plaintiff on a gurney preparing

9

for surgery and told her that he did not like her). As a result, his claim fails. *Harte*, 864 F.3d at 1197 (rejecting claim because conduct was not so outrageous "as to go beyond the bounds of decency … in a civilized society").

### III

For the foregoing reasons, Defendants' Motion for Summary Judgment, Doc. 82, is GRANTED.

It is so ordered.

Date: March 24, 2025                    \_s/ Toby Crouse_____
                                        Toby Crouse
                                        United States District Judge